CARIBE LUMBER AND TRADING CORPORATION, Plaintiff and Appellee, *v*. ANGEL LUIS MARRERO and DOMINGO RÍOS, Defendants, and Appellant, the latter.

No. 11226.   Argued November 1, 1955.—Decided December 22, 1955.

---

*Benigno Dávila* for appellant. *Jorge M. Morales* and *Ramón L. Nevares* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellee Caribe Lumber & trading Corporation is and was engaged, before June 8, 1950, in the purchase of construction materials. In order for this corporation to open a credit account to Angel Luis Marrero and Eduardo Rodríguez or to either one, appellant Domingo Ríos bound himself as guarantor in solidum of these persons or of either one, up to the sum of $2,000, including interest at the stipulated rate. This security consists of a letter dated June 8, 1950, sent by guarantor Domingo Ríos to Caribe Lumber & Trading Corporation.[1] After receiving this security, the

---

[1] The text of the letter is as follows:

June 8, 1950

Caribe Lumber &
Trading Corporation
P. O. Box 1821
San Juan, Puerto Rico
Sirs:

In order that you may open a credit account to Ángel Luis Marrero and Eduardo Rodríguez or to either one, I hereby bind myself as guarantor in solidum of these persons or of either one in your favor up to the sum of two thousand ($2,000) dollars including interest at the stipulated rate.

corporation began to sell construction materials to Angel Luis Marrero and Eduardo Rodríguez, thereby establishing a current account between them.

On September 7, 1951, codebtor Angel Luis Marrero subscribed and delivered to Caribe Lumber & Trading Corporation four promissory notes for the following amounts and maturity dates:

(a) For $502.50 to mature on October 7, 1951, accruing interest at 8% per annum;

(b) For $505.50 to mature on November 7, 1951, at the same rate of interest;

(c) For $507.50 to mature on December 7, 1951, at the same rate of interest; and

(d) For $499.06 to mature on January 7, 1951, and at the same rate of interest.[2] These obligations were executed for "value received" and in each one the debtor agreed that the maturity and default in payment of one of them would render all of them enforceable and overdue.

Thereafter Caribe Lumber & Trading Corporation filed this suit against Angel Luis Marrero and Domingo Ríos for

I also bind myself to accept, whenever requested by you, drafts of these persons or of either one, or to subscribe obligations in solidum with them or with either one in your favor within the limit of the amount specific above, in order to expedite your discounts or negotiations on such securities.

Truly yours,

(Sgd.)   DOMINGO RÍOS

DOMINGO RÍOS

[2] Possibly due to an error the maturity date of this note was stated as January 7, 1951 instead of January 7, 1952. However, the error in date, if any, does not affect the decision in this case. The text of the note indicated is as follows:

"Amount $499.06                                          Maturity January 7, 1951

"We shall pay in solidum to Caribe Lumber & Trading Corporation in San Juan, Puerto Rico, or to its order, on January 7, 1951, the amount of four hundred ninety nine dollars and/ .06/100 dollars value received to our complete satisfaction and we also bind ourselves to pay interest of 8% per annum in case of delay and the costs and expenses which the collection of this debt may cause as well as the attorney's fees which the holder of this obligation may incur in case of a judicial claim.

collection on the notes described. Only guarantor Domingo Ríos answered the complaint. After certain proceedings and a trial on the merits, the lower court rendered judgment ordering both defendants to pay plaintiff in solidum the amount of $2,000, plus the costs and $350 for attorney's fees. Thereupon Ríos appealed.

There is no controversy as to the fact that the obligations are overdue, unpaid and represent the balance of the current account opened by appellee to Angel Luis Marrero and Eduardo Rodríguez for the purchase of construction materials. However, appellant Ríos has essentially maintained from the beginning of this suit that (1) he did not sign the notes described in the complaint, which fact is admitted by appellee; (2) that the original obligation derived from the current account, that which he secured up to the sum of $2,000, was extinguished by novation by means of notes signed by Angel Luis Marrero and accepted by the creditor in payment of the original obligation, and (3) that his security was cancelled once the principals paid appellee more than $2,000 for the purchase of construction materials. The position taken by appellant is clear in the following extract from his motion for reconsideration of judgment:

"We expressly submit ourselves to the jurisdiction of the Insular Courts of the city of San Juan, Puerto Rico.

"We expressly agree to the renewal or extension of time which may be granted at the request of any of the undersigned, remaining thus liable in solidum for the balance extended with the same force as the original obligation and we thus waive the right of homestead, notice, presentation, and protest.

"It is expressly agreed that the maturity and failure to pay this obligation will render enforceable and overdue any other obligation signed, contracted or indebted by me or by us or by either one of us in favor of the holder of this obligation and, in the same way, the maturity of the present obligation will be anticipated, and will be enforceable from the moment we fail to pay a matured obligation which we may have subscribed, contracted or indebted, jointly or severally, in favor of the holder of this obligation, thus authorizing him in either case to collect it.

"San Juan, Puerto Rico, September 7, 1951.

"Signature space for the signature of Domingo Ríos

"Address: Toa Baja, P. R.

Signature (Signed) Angel Luis Marrero

Address: Box 252—Bayamón."

"The court points out in its findings that in his answer to the complaint defendant Domingo Ríos essentially alleged that he did not secure in solidum the obligations stated in the notes because he did not subscribe them. In view of the merits of the defenses, we must state that defendant Domingo Ríos alleged, maintained and maintains not only that he did not subscribe the notes sought to be collected but that the obligation which defendant Domingo Ríos secured was a debt incurred by Angel Luis Marrero and his partner Eduardo Rodríguez for the purchase of materials, and such original debt or its balance was replaced by the notes subscribed by Angel Luis Marrero alone without any third person's security, it being admitted by plaintiff, expressly or impliedly, that defendant Domingo Ríos had ceased to be a guarantor of Angel Luis Marrero.

"The court does not mention the statements of account which plaintiff sent monthly to defendant Angel Luis Marrero and to his partner Eduardo Rodríguez and which were submitted in evidence, proving irrefutably the existence of an original debt or current account for the purchase of materials, incurred by Angel Luis Marrero and his partner Eduardo Rodríguez. This account showed that in the period of one year the debtors took in construction materials and paid plaintiff about $10,000, and that when such debt or account was balanced and settled on September 7, 1951, plaintiff replaced it by novation, accepting defendant Angel Luis Marrero as its only debtor by virtue of the notes claimed."

Likewise, in the brief introduced in support of this appeal appellant states the following: "Angel Luis Marrero and Eduardo Rodríguez, working as partners, and secured up to the sum of $2,000 by Domingo Ríos, held a current account, for the purchase of construction materials, with Caribe Lumber & Trading Corporation from June 1950 to September 7, 1951. The security granted by Domingo Ríos, appellant in this case, is stated in a letter dated June 8, 1950 . . . For one year and two months, the volume of business or purchases made by Angel Luis Marrero and Eduardo Rodríguez amounted to nearly $10,000; and on December 7, 1951, plaintiff Caribe Lumber & Trading Corporation liquidated the account and accepted as payment, change and

novation for the balance of $2014.56 four notes subscribed by the debtor Angel Luis Marrero alone . . ." In another part of the same brief, appellant states thus: "It was also clearly established that an account or original obligation existed between Angel Luis Marrero and Eduardo Rodríguez, acting in partnership as debtors for the purchase of construction materials with plaintiff as creditor, and that the total amount of the notes is the balance resulting from the liquidation of the original account until September 7, 1951; that is, the date on which Angel Luis Marrero subscribed the notes sought to be collected now."

This is appellant's theory. We shall now consider the fundamental questions he urges in this appeal.

■■ In the first place we must determine the character of the security furnished by Ríos. This takes us to the phraseology of the document itself. The document says: "In order that you may open a credit account to Angel Luis Marrero and Eduardo Rodríguez or to either one, I hereby *bind myself as guarantor in solidum* of these persons or of either one in your favor up to the sum of two thousand ($2,000) dollars including interest at the stipulated rate." (Italics ours.) By binding himself as *guarantor in solidum*, Ríos became a true principal codebtor, with the same status as the principal debtors. His solidary liability towards the creditor is the same as that of the principals. *Drug Company of P. R., Inc.* v. *Susoni*, 43 P.R.R. 740, 749; *National City Bank* v. *De la Torre*, 48 P.R.R. 130; *Colón* v. *P. R. & Am. Insurance Co.*, 63 P.R.R. 332, 340. This does not mean, however, that as regards the relation between the surety and the principals, the surety contract loses its own character if from the terms of the contract or from the expression of the will of the surety it appears that it was not the latter's intention to become a principal debtor but merely to constitute himself as surety, although binding himself in solidum. *Drug Company of P. R., Inc.* v. *Susoni, supra; National City Bank* v. *De la Torre, supra; Colón* v. *P. R. &*

*Am. Insurance Co., supra.* But this last question is not now before us and once it is decided that the surety Domingo Ríos is a principal codebtor of appellee, the rules and provisions inherent in the surety contract, some of which are invoked by appellant, become inapplicable to the specific facts of this case.

██ The original obligation arising from the current account was not novated, as appellant urges, by the obligations or notes subscribed by the codebtor Angel Luis Marrero. "Obligations may be modified: 1. By the change of their object or principal conditions. 2. By substituting the person of the debtor. 3. By subrogating a third person in the rights of the creditor." Section 1157 of the Civil Code, 1930 ed., 31 L.P.R.A., § 3241. But in order that an obligation may be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points. Section 1158 of the same Code, 31 L.P.R.A., § 3242.

Construing §§ 1203 and 1204 of the Spanish Civil Code, equivalent to §§ 1157 and 1158 of our Code, the Supreme Court of Spain has laid down the well-settled rule that novation, whether it refers to the subject or to the object of the obligation, is never presumed, but it must be established without any sort of doubt.[3] Novation not being presumed, there must be the express declaration that it is the intention and purpose of the contracting parties to extinguish the old debt by the new,[4] unless there is a complete incom-

---

[3] Judgments of October 15, 1907, July 10, 1917, December 5, 1919, September 8, 1939, December 31, 1941, April 25, 1950, among others.

[4] Commenting on § 1204 of the Spanish Civil Code, equivalent to § 1158 of our Code, Manresa says:

"When the novation is objective and it is expressly so declared and even given that name, but yet, it does not consist of the modification of either the object or the principal conditions, as required by the foregoing Section, no true and valid novation exists, since the contracting parties can no<sup>+</sup> change the legal nature of the acts. This is not a denial of the validity of these small .modifications, but of their character of novation, as indicated when commenting on the preceding Section." (Manresa, *Comentarios al Código Civil Español,* 5th ed., Vol. VII, p. 765.)

patibility between both obligations, in which case the express declaration of the intent to novate is not imperative.[5]   Now then, in order that an obligation be extinguished by novation it is necessary that in the absence of an express declaration to that effect, the old and new obligations be incompatible in all points, or pursuant to § 1157, that its object or principal conditions be changed.   In such case, in order to constitute novation the new obligation must evidence an absolute incompatibility by reason of its nature, irreductibility or impossibility of simultaneous fulfilment.[6]   "The novation embraced by the Civil Code as one of the means to extinguish an obligation—according to the Judgment of June 11, 1947 of the Supreme Court of Spain—offers the peculiar characteristic that distinguishes it from other modes in the sense that it may be said only relatively that it extinguishes the obligation it affects, because the actual effect is to change, modify or substitute it by another;  and since both can not subsist concurrently, for then the legal transaction of novation would not take place, it may be understood that its effect is to extinguish the obligation substituted, whenever the modification alters or changes its essence, and that only in the absence of this, the old obligation will not be extinguished, there remaining no doubt that such is the meaning attributed to § 1.203 C.C."   (*Doctrina Civil del Tribunal Supremo*, Vol. III, p. 3664.)

■ It must be clearly stated now that in this case there was no novation by substitution in the person of the debtor. Appellant seems to insinuate that his security covered only Angel Luis Marrero and Eduardo Rodríguez, acting as partners.   However, the phraseology of the security paper is clear and leaves no room for any such interpretation.   Ríos bound himself as guarantor in solidum of Marrero and Rodríguez or of either one.   The debt, whether contracted by

---

[5] Judgments of June 14, 1916, December 5, 1919 and June 8, 1936.

[6] Manresa, *Comentarios al Código Civil Español*, 5th ed., Vol. VII, p. 772.

both, either as partners or not, or by either one individually, was secured by Ríos up to the sum of $2,000. By virtue of the solidary character of the security, Ríos was appellee's debtor, as well as Marrero, and both remained as such even after the delivery of the notes, for as we shall see immediately, the delivery of those documents to the creditor did not have the effect of discharging them from the original obligation.

Even admitting that there was a modification of the original obligation, at least as to the day of maturity and as to the agreement on the payment of interest, such modication does not alter or change its essence and, as a result, it can not produce the extinctive effect of novation. Let us see. The day of maturity fixed for the four notes is, at the most, an extension of time for the fulfilment of the obligation. But that extension was not one of the essential conditions. This may be equally said about the partial payment of the interest. In regard to the latter, it must be remembered that whatever interest was agreed upon was also secured according to the instrument itself. At any rate, these are modifications under merely accidental circumstances which do not produce the extinctive effect of novation in the absence of an express declaration of the parties, as we have indicated. Judgments of June 22, 1917, July 2, 1917 and May 23, 1916 of the Supreme Court of Spain. Moreover, the delivery of the notes by Marrero to the creditor did not constitute a payment of the original debt. *Santini Fertilizer Co.* v. *Jiménez*, 42 P.R.R. 32. Such documents were merely evidence of the existence of the debt. *Drug Co. of P. R.* v. *Miranda*, 50 P.R.R. 508. Section 1124 of our Civil Code, 1930 ed., provides that the delivery of promissory notes to order or drafts or other commercial paper shall only produce the effects of payment when collected or when, by the fault of the creditor, their value has been affected. The notes delivered by Marrero to the creditor not having

been collected, the original obligation continued in full force. *Santini Fertilizer Co.* v. *Jiménez, supra; Drug Co. of P. R.* v. *Miranda, supra; Roig Commercial Bank* v. *Portela,* 52 ·P.R.R. 626; Judgment of June 21, 1946, of the Supreme Court of Spain.

The security was not extinguished either by the fact that the volume of purchases made by the principals during one year and some months amounted to more than $10,000. Such security was not limited to the first $2,000 of those purchases, nor to a fixed term. Therefore, that fact does not discharge appellant from liability. *Cf. Drug Co. of P. R., Inc.* v. *Susoni, supra.*

These questions being solved, the errors assigned by appellant under Nos. 3 to 15, both included, fall by the wayside.

The first two errors lack merit. The fact that the trial court decided too hastily the questions submitted to it in no way affects the judgment appealed from, if it is correct.

The other errors are also frivolous. The erroneous conclusion of the lower court to the effect that all the notes had November 7, 1951 as the date of maturity lacks importance in view of the fact that appellant himself admitted at the pre-trial hearing that such notes had matured at the date of the filing of the complaint.

The lower court stated in its findings that appellant had admitted that the debt claimed originated in the purchase of construction materials by defendants. Appellant attacks that finding as erroneous since he did not make any purchase. The alleged error is not reversible. Ríos is liable as solidary guarantor even if he has not directly intervened in the purchase of materials.

The error referring to the terms of the judgment as to codefendant Marrero must be raised by the latter and not by appellant. At any rate, the judgment, far from

harming Marrero, benefits him and does not affect appellant in any way.

The lower court ordered defendants to pay attorney's fees. In so doing it considered that appellant Ríos had been obstinate. Under such circumstances, the award is not erroneous. *Soto* v. *Lugo*, 76 P.R.R. 416 and authorities therein quoted.

For the reasons stated the judgment appealed from will be affirmed.